FILED

2018 May-07  PM 04:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| KAMILES CREWS-BEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  2:16-cv-01367-VEH-SGC |
| | ) | |
| LIEUTENANT D. JOHNSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

The plaintiff has filed a *pro se* second amended complaint pursuant to 42 U.S.C. § 1983 for violations of his civil rights.  (Doc. 21).  The second amended complaint names the following defendants: Warden Leon Bolling, Captain Jeffery Baldwin, Lieutenant Deaundra Johnson, Correctional Officer Rodney Smith, and Correctional Officer David Mason.   (*Id.* at 1).  The plaintiff seeks injunctive and monetary relief . (*Id.* at 9).  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the second amended complaint was referred to the undersigned for a preliminary report and recommendation.  *See McCarthy v. Bronson*, 500 U.S. 136 (1991).

## I.    PROCEDURAL HISTORY

On March 10, 2017, and May 22, 2017, the plaintiff filed motions seeking orders requiring the defendants to: (1) separate him from Raphael Landrum, an

inmate the plaintiff alleges assaulted him in June 2016; and (2) transfer the plaintiff to another facility and refrain from retaliating against him.  (Docs. 22, 28).  The undersigned ordered the defendants to respond to the plaintiff's motions for preliminary injunction.  (Doc. 25).  On August 8, 2017, the court accepted the undersigned's recommendation—to which the plaintiff did not object—and denied the plaintiff's motions for preliminary injunction.  (Doc. 35; *see* Docs. 32, 33).

On August 17, 2017, the undersigned entered an Order for Special Report directing the Clerk to forward copies of the second amended complaint to each of the named defendants and directing the defendants to file a Special Report addressing the plaintiff's factual allegations.  (Doc. 36).  The order advised the defendants the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, would be construed as a motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure*.  (*Id.*).  On August 30, 2017, the plaintiff filed a response noting that the court had accurately interpreted his claims.  (Doc. 37).

On November 15, 2017, the defendants filed a Special Report and supporting evidence.  (Doc. 45).  On December 22, 2017, the undersigned notified the parties the Special Report would be construed as a motion for summary judgment and ordered the plaintiff to respond by filing affidavits or other material within twenty-one (21) days.  (Doc. 51).  The order also advised the plaintiff of the

consequences of any default or failure to comply with Rule 56.  (*Id.*).  *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985).  Although the plaintiff filed responses to the defendants' Special Report on November 29, 2017 (Doc. 47), and December 4, 2017 (Doc. 48), he did not submit any additional material after the court's December 22, 2017 order.[1]  Accordingly, the defendants' motion for summary judgment is fully briefed and ripe for adjudication.

## II.    STANDARD OF REVIEW

Because the court has construed the defendants' Special Report as a motion for summary judgment, Rule 56 governs.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000).  The moving party bears the burden to establish prima facie entitlement to summary judgment by showing the absence of genuine issues of material fact such that judgment as a matter of law is due.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).  Unless the plaintiff, who carries the ultimate burden of proving his

---

[1] Also prior to the court's December 22, 2017 order, the plaintiff filed a document styled as an "*ex parte* Notice."  (Doc. 49).  To the extent this notice may attempt to add Lt. Wallace Peterson and Sgt. William Bradford as defendants, it fails.  The addition of new parties would contradict the plaintiff's admission that the court accurately described his claims in the Order for Special Report.  (Doc. 37).

action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be material facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations and quotation marks omitted).

However, "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because the plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

## III.   SUMMARY JUDGMENT FACTS[2]

In May 2016, the plaintiff wrote a letter to defendant Johnson. (Doc. 21 at 4). A few days later, Lieutenant Johnson instructed an officer to escort the plaintiff to the West Classification Offices where Johnson was waiting. (*Id.*). Johnson told the plaintiff the letter was "a slap in the face" and that she and the plaintiff should be allies rather than enemies. (*Id.*). Johnson also stated that if the plaintiff or "anybody else wrote her it had better be correct." (*Id.*). About a week later, the plaintiff wrote Lieutenant Johnson a second letter.[3] (*Id.*).

On June 3, 2016, the plaintiff was at Chapel, talking with inmates, when two other inmates, Raphael Landrum and Anthony Jones, approached.[4] (Doc. 21 at 4). At another inmate's request, the plaintiff agreed to go to B-Block to "retrieve funds" from Landrum. (*Id.*). Between 1:15-1:30 p.m., the plaintiff, Landrum, and Jones left Chapel and walked together to A/B Unit. (Doc. 21 at 4). Defendant Mason was standing at the entrance on the main hall. (*Id.*). Although Mason knew the plaintiff was not assigned to A/B Unit, he allowed the plaintiff to enter with Landrum and Jones. (*Id.* at 4-5). When the inmates walked down the corridor, the

---

[2] Under the summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the plaintiff. Factual disputes are described via footnote.

[3] Johnson alleged in an unsworn statement that she never received, and has no knowledge of, a letter from the plaintiff. (Doc. 45-6 at 3). The plaintiff does not describe the substance of either letter.

[4] The plaintiff initially identified these inmates as "Ralph" and "Aneek." (Doc. 21 at 4). However, these inmates were later identified as Landrum and Jones. (Doc. 45-6 at 1, 9).

door to B-Block was locked.  (*Id*. at 5).  Landrum asked defendant Smith, the

cubicle operator, to open the door to B-Block.  (*Id*.).  Smith observed the inmates

standing at the door.  (*Id*.).  Smith also knew the plaintiff was not assigned to A/B

Unit.  (Doc. 21 at 5).  However, Smith unlocked the door and allowed the inmates

through.  (*Id*.).  As the inmates entered, Smith called the plaintiff's name, shook an

ink pen, and stated he was about "to get the stick."  (*Id*.).

      The plaintiff entered a cell with Jones and Landrum, and after Landrum

locked the door, he and Jones immediately began assaulting the plaintiff.  (Doc. 21

at 5).   During the assault, Jones kept repeating, "Write Lt. Johnson another letter."

(*Id*.).  After the inmates beat and "stomped" on the plaintiff, Landrum began hitting

the plaintiff's hands with a stick and asking which hand he wrote with.  (*Id*.).

While Landrum hit the plaintiff's hands, Jones said, "She want that b[**]ch broke,

break that b[**]ch."  (*Id*.).

      After the assault was finished, Landrum told the plaintiff to leave the cell

and go to the exit door of the cell block.  (Doc. 21 at 5).   When the plaintiff

reached the exit door, Landrum got defendant Smith's attention and pointed to the

plaintiff; Smith then opened the door for the plaintiff to leave.  (*Id*.).  Defendant

Mason was still at the front door, and when he noticed the plaintiff's bruised and

swollen face, he told the plaintiff he had to stay in the corridor for two hours before

he could leave.  (*Id*.).  However, after looking down the hall and seeing it was empty, Mason told the plaintiff to leave.[5] (*Id*.).

The plaintiff went to his assigned unit and returned to the Chapel when Moorish Science Service was called.  (Doc. 21 at 5-6).  At approximately 4:30 p.m., Correctional Officer Robert Williams, a non-party, called for a supervisor to report to the Chapel.  (Doc. 45-6 at 1).  Sergeant William Bradford, also a non-party, responded to the Chapel, and Williams said he thought the plaintiff had been beaten and was about to pass out.  (*Id*.).  Inmates assisted the plaintiff to the infirmary.  (Doc. 21 at 6).

---

[5] Smith and Mason offer a different series of events for June 3, 2016.  Smith states that at approximately 11:30 a.m. he observed three inmates, including the plaintiff, enter A/B Block.  (Doc. 45-4).  Because Smith the plaintiff was not assigned to the block, he told the plaintiff to go back to the C/D Unit, his block at the time.  (*Id*.).  Smith states the plaintiff turned around and left the block, while the other inmates walked inside.  (*Id*.).

Mason states that at approximately 1:00 p.m. he was standing at the front door to the A/B Unit when the plaintiff approached the front door and asked if he could come in for a few minutes and leave when Mason called the next Chapel service.  (Doc. 45-5).  Mason alleges he told the plaintiff he could not because it was not his assigned unit; he directed the plaintiff to go back to his block.  (*Id*.).

Smith states he let inmates back into the block after Chapel service at about 1:20 p.m. but that the plaintiff was not among them.  (Doc. 45-4).  Smith claims that around 1:30 p.m. he noticed the plaintiff at the front door trying to leave the block.  (*Id*.).  Smith states Mason was a Rover in the unit and was talking to inmates on A-side when the plaintiff attempted to leave the block.  (*Id*.).  Smith states he opened the exit door and the plaintiff left the block.  (*Id*.).

Mason states that at approximately 2:00 p.m. he was standing at the A/B front door monitoring inmates returning from Chapel service when he noticed the plaintiff coming out of B-Block.  (Doc. 45-5).  Mason contends he reminded the plaintiff he told him not to go in the block.  (*Id*.).  Mason states he directed the plaintiff to remain in the corridor until he was ready for him to leave; after five or ten minutes, he directed the plaintiff to leave and not return.  (*Id*.).

Defendants Bolling and Baldwin visited the plaintiff in the infirmary and inquired who assaulted him.  (Doc. 21 at 6).  The plaintiff said he did not know.  (*Id.*).  The plaintiff did not respond when Baldwin again asked the assailants' identities.  (Doc. 45-2).  Sgt. Bradford notified Correctional Investigator Charles Hedrick of the Investigations & Intelligence Division ("I&I") that the plaintiff had been assaulted.  (Doc. 45-6 at 1, 9-10).  The plaintiff sustained multiple contusions to his head, face, arms, and left knee; he was transported to Brookwood Hospital for treatment.  (*Id.* at 1, 7).  The plaintiff returned to prison with arm braces and a splint on his left pinky finger.[6]  (*Id.* at 8).

On November 16, 2016, during a Segregation Review Board, Landrum stated someone had placed two black gloves and a threatening note underneath his cell door.  (*See* Doc. 45-6 at 1).  Landrum stated his belief that the note was from the plaintiff.  (*Id.*).  When asked why he thought the plaintiff was responsible, Landrum admitted he had attacked the plaintiff on orders from inmate Earl Manassa.[7]  According to Landrum, Manassa wanted the plaintiff's hand broken because he was writing letters to Lieutenant Johnson and masturbating while looking at female staff.  (*Id.*).

---

[6] The first amended complaint alleged the plaintiff sustained a fractured left wrist, a sprained right wrist, a broken pinky finger, as well as minor bruising and swelling.  (Doc. 10 at 7).

[7] Manassa was transferred to St. Clair Correctional Facility on August 26, 2016.  (Doc. 45-6 at 1).

On November 17, 2016, Warden Errol Pickens, a non-party, interviewed the plaintiff; the plaintiff stated Landrum and Jones assaulted him "because of Lieutenant Johnson." (Doc. 45-6 at 1; Doc. 48 at 4). Specifically, the plaintiff stated Landrum and Jones informed him they were going to break his hands because Lieutenant Johnson wanted them broken. (Doc. 45-6 at 1). On the same day, the plaintiff submitted a written statement detailing the assault. (Doc. 45-6 at 4). The plaintiff claimed that, during the assault, Landrum and Jones stated Johnson wanted his wrists broken. (*Id.*). The plaintiff claimed someone later warned him Johnson did not believe the first assault was sufficient and that she would send inmates to complete the job.[8] (*Id.*). The plaintiff further claimed an unknown inmate told him Johnson entered B-Block with "some big dude," announcing the plaintiff was an "example" and if other inmates were caught "gunning," she would have their wrists broken as well. (*Id.*).

Also on November 17, 2016, Landrum submitted a written statement claiming someone had placed a pair of black gloves and a threatening note in his cell. (Doc. 45-6 at 5). Landrum expressed his belief that an inmate who had his hands broken was responsible. (*Id.*). Landrum claimed the inmate believed Lieutenant Johnson "put a hit out on him and that [he] took the hit." (*Id.*).

---

[8] The second amended complaint and the plaintiff's affidavit state Mason warned him "through an inmate" that Johnson planned to have inmates assault him again. (Doc. 21 at 6; Doc. 48 at 4).

Landrum claimed Johnson did not put a hit on the plaintiff and denied being involved in the assault on the plaintiff.  (*Id*.).

Warden Pickens questioned Jones concerning the plaintiff's allegations.  (Doc. 45-6 at 1).  Jones admitted he took part in the assault but refused to provide any names.  (*Id*.).  When Pickens asked Jones why he assaulted the plaintiff, Jones responded that the plaintiff had been disrespectful to female staff by exposing his penis and masturbating in front of them.  (*Id*.).  During Agent Hedrick's I&I investigation, Jones stated he lured the plaintiff into the A/B Unit and assaulted him, attempting to break his hands.  (Doc. 45-6 at 9).  Jones stated another inmate—whom he refused to identify—offered him $150.00 to assault the plaintiff because he was masturbating in the hallway and other inmates "decided to have it handled."  (*Id*.).  Pickens also interviewed Johnson about the plaintiff's allegations.  (Doc. 45-6 at 1).  On November 17, 2016, Johnson submitted a statement claiming she never received any letters from the plaintiff and denying the allegations.  (*Id*. at 3, 9).

On Wednesday, July 19, 2017, Agent Hedrick of I&I spoke with the plaintiff at the prison.  (Doc. 45-6 at 9).  The plaintiff stated he did not wish to prosecute Landrum or Jones for assaulting him; he signed a Waiver of Prosecution form documenting this decision.  (*Id*.).  Agent Hedrick closed the investigation due to the plaintiff's lack of prosecution.  (*Id*.).

## IV.   ANALYSIS

### A.   <u>Official Capacity Claims</u>

To the extent the plaintiff's constitutional claims are brought against the defendants in their official capacities for monetary damages, they are due to be dismissed under the doctrine of sovereign immunity.  The Eleventh Amendment bars § 1983 claims against the state or an agency of the state.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Eleventh Amendment immunity also bars official capacity claims for money damages brought against officials and employees of state entities.  *Id*. at 101.  Accordingly, there are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law as to the plaintiff's official capacity claims.  The individual capacity claims are discussed in turn.

### B.   <u>Conspiracy</u>

The plaintiff alleges Johnson conspired with Landrum and Jones; Johnson wanted Landrum and Jones to assault the plaintiff because of letters he wrote to her.  (Doc. 21 at 6, 8).  The plaintiff claims: (1) during the June 3, 2016 assault, Jones stated Johnson wanted his wrists broken; (2) he received a warning later that Johnson did not believe Landrum and Jones's assault was sufficient and would send inmates to assault him again; and (3) an inmate informed him Johnson entered a cell block and stated the plaintiff was an example and if any other inmates were

11

caught masturbating, she would have their wrists broken too.  (Doc. 21 at 5-6; Doc. 45-6 at 4; Doc. 48 at 4).  The plaintiff further alleges Bolling, Baldwin, Smith, and Mason conspired to effectuate and/or cover up the assault.  (Doc. 21 at 8).

"In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed."  *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984).  Moreover, a "complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."  *Id*.  The "naked assertion of a conspiracy" without "supporting operative facts" is insufficient to state a claim under § 1983.  *Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  A plaintiff attempting to prove a § 1983 conspiracy must show the parties "reached an understanding" to deny the plaintiff's rights.  *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).  A plaintiff must show some evidence of an agreement between the defendants.  *Bailey v. Bd. of Cty. Comm'rs of Alachua Cty.*, 956 F.2d 1112, 1122 (11th Cir. 1992).

The plaintiff has not come forward with any admissible evidence to show Johnson conspired in his assault.  Although the plaintiff claims Landrum and Jones stated during the assault that Johnson wanted his wrists broken, the plaintiff has no personal knowledge of Johnson's instructions.  Landrum and Jones's comments, which constitute inadmissible hearsay, are insufficient standing alone to show the

three reached an agreement.  Neither did the plaintiff personally hear Johnson say she wanted the plaintiff assaulted again or that he was an example to other inmates who were caught masturbating.  Indeed, the plaintiff acknowledges he heard these statements from others.  (Doc. 21 at 6; Doc. 45-6 at 4; Doc. 48. at 4).  Plaintiff's failure to submit admissible evidence of a conspiracy renders his claim a mere naked assertion.

Neither has the plaintiff come forward with any operative facts supporting the allegation that Bolling, Baldwin, Smith, or Mason conspired to effectuate and/or cover up the assault.  Again, the plaintiff offers no more than vague and general conclusions that a conspiracy existed among these defendants.  Absent from the record is any evidence that these defendants reached an understanding to help Johnson carry out the assault and/or cover it up.  Accordingly, there are no genuine issues of material fact, and defendants are entitled to judgment as a matter of law as to the plaintiff's conspiracy claims.

### C.   <u>Failure to Protect</u>

The plaintiff alleges Mason and Smith allowed him to enter the A/B Unit with inmates Landrum and Jones, despite their knowledge that the plaintiff was not assigned to the unit.  (Doc. 21 at 4-5).  The plaintiff alleges Smith called his name, pointed an ink pen, and stated he was about "to get the stick."  (*Id.* at 5).  The

plaintiff claims Mason and Smith knew Landrum and Jones were going to assault him but failed to protect him.

The Eighth Amendment's prohibition on cruel and unusual punishment requires institutional officers to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted). It is clear, however, that not every injury suffered by an inmate at the hands of another inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986). "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)); *see Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981).[9] In these contexts, a constitutional violation occurs only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively "sufficiently serious" harm. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the Fifth Circuit rendered prior to October 1, 1981.

F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. An "official's failure to alleviate a significant risk that he should have perceived but did not," is insufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, there must be a "'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference." *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown*, 894 F.2d at 1537).

Once an institutional official's knowledge of a substantial danger or risk to an inmate is established, a plaintiff must show the official was deliberately indifferent to that risk. An "Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, a plaintiff must produce evidence sufficient to show a defendant's

deliberate indifference to a known risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

### 1.    Officer Mason

Viewing the facts in the light most favorable to the plaintiff, there is no evidence Mason was subjectively aware that Landrum and Jones would attack the plaintiff on June 3, 2016, or that they otherwise posed a substantial risk of serious harm.  The record is devoid of evidence that Mason knew of a previous incident or credible threat from which he could infer that Jones or Landrum posed a substantial risk of harm to the plaintiff before the attack.  At most, Mason may have acted negligently by allowing the plaintiff to enter the A/B Unit while knowing he was not assigned to the area.  However, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983."[10] *Brown*, 894 F.2d at 1537.  Accordingly, there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law as to the plaintiff's Eighth Amendment failure to protect claim against Mason.

---

[10]  The plaintiff claims Mason saw how badly he was injured after the assault and said he could not leave the unit for two hours.  (Doc. 48 at 5).  However, when Mason saw that the hallway was empty, he told the plaintiff to leave.  (*Id.*).  The plaintiff does not allege Mason: (1) saw the assault occurring and failed to intervene; or (2) denied medical care after the assault.  Rather, the plaintiff claims Mason failed to call a supervisor or investigate the matter.  (Doc. 48 at 5).  However, Mason's failure to investigate or call a supervisor after the assault is not a constitutional violation.  *See Vinyard v. Wilson*, 311 F.3d 1340, 1355-56 (11th Cir. 2002).

###### 2. Officer Smith

The plaintiff claims Smith was assigned to the cubicle in the A/B Unit and allowed him to enter with Landrum and Jones even though Smith knew he was not assigned to the area.  (Doc. 48 at 2).  The plaintiff further claims Smith called his name as he entered, pointed, and said he was about "to get the stick."  (Doc. 21 at 5).  Based on Smith's statement, it can be inferred Smith: (1) had subjective knowledge that Landrum and Jones posed a substantial risk of serious harm to the plaintiff; and (2) was deliberately indifferent to that risk by allowing the plaintiff into the cell block with Landrum and Jones.

Smith's version of events is quite different from the plaintiff's.  Smith avers on the day of the assault he: (1) denied the plaintiff access to the A/B Block; (2) watched the plaintiff leave after he denied entry; (3) did not know the plaintiff was in the unit until he appeared at the exit door; and (4) allowed the plaintiff to exit.  (Doc. 45-4).  Assessing the parties' credibility is inappropriate on a motion for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson Cty. Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1986).  The divergent stories presented by Smith and the plaintiff regarding the events of June 3, 2016, create a genuine issue of material fact which cannot be decided in Smith's favor on summary judgment.

Neither is Smith entitled to qualified immunity at this juncture.  "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard*, 311 F.3d at 1346 (quotation marks omitted).   To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the alleged wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks and citations omitted).   "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Id*.  The plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).

Smith indisputably was acting within the scope of his discretionary authority during the time in question. *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) ("discretionary authority" includes "all actions of a government official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority'") (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564

(11th Cir. 1988)).  To defeat qualified immunity, the plaintiff must show a genuine issue of material fact regarding whether Smith violated his constitutional rights.

As previously stated, the plaintiff's version of the facts establishes Smith violated his constitutional rights by failing to protect him from Landrum and Jones. Moreover, the duty of officers to protect inmates from assault by other inmates was clearly established years before the June 3, 2016 assault.  *See Farmer*, 511 U.S. at 833-34 (holding "prison officials have a duty . . . to protect prisoners from violence at the hands of other prisoners" and "[b]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society") (quotation marks and citations omitted); *Wilson*, 501 U.S. at 303 (describing "the protection [an inmate] is afforded against other inmates" as a "condition of his confinement" subject to Eighth Amendment protection); *Zatler*, 802 F.2d at 400 (it is "well settled that a prison inmate has a constitutional right to be protected from the constant threat of violence and from physical assault by other inmates").

Because a factual dispute exists as to whether defendant Smith violated the plaintiff's Eighth Amendment rights by failing to protect him from an inmate assault on June 3, 2016, he is not entitled to qualified immunity.  Accordingly, the defendants' motion for summary judgment is due to be denied as to the failure to protect claim against Smith.

### D.   **Failure to Investigate**

The plaintiff contends Bolling and Baldwin failed to investigate or contact I&I regarding the June 3, 2016 assault.  (Doc. 21 at 6, 8).  However, there is no constitutional right to an investigation of incidents such as the one alleged in the instant matter.  *See generally Vinyard*, 311 F.3d at 1355-56 (no constitutional right to an investigation of excessive force incident).  Moreover, the plaintiff admits both Baldwin and Bolling asked who assaulted him, but the plaintiff would not provide the names of his assailants.  (Doc. 48 at 3).  Indeed, the plaintiff repeatedly notes he did not inform prison officials of his assailants' identities until November 2016.  (Doc. 46 at 2; Doc. 47 at 2; Doc. 48 at 6).  The plaintiff does not dispute that prison officials conducted a more thorough investigation once he identified his attackers.  Therefore, it appears the plaintiff's failure to cooperate contributed to the delay in the investigation.

Furthermore, the undisputed evidence shows Agent Hedrick of I&I conducted an investigation into the matter but that the plaintiff did not wish to prosecute his assailants and signed a Waiver of Prosecution to that effect.  (Doc. 45-6 at 9).  Consequently, Agent Hedrick closed the investigation due to the plaintiff's failure to prosecute.  (*Id*.).

Accordingly, because the plaintiff had no constitutional right to an investigation and the undisputed evidence contradicts the plaintiff's allegations,

there are no genuine issues of material fact, and the defendants are entitled to judgment as a matter of law as to the plaintiff's failure to investigate claims.

## V.    RECOMMENDATION

For the reasons stated above, the undersigned **RECOMMENDS** the defendants' motion for summary judgment be **GRANTED IN PART** and **DENIED IN PART**.  (Doc. 52).  Specifically, summary judgment is due to be: (1) **DENIED** on the individual capacity claim against Correctional Officer Rodney Smith for failure to protect; and (2) **GRANTED** as to all other claims, which are due to be **DISMISSED WITH PREJUDICE**.    Finally, it is **FURTHER RECOMMENDED** the remaining claim against Smith be referred to the undersigned for further proceedings.

## VI.   NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation.  Any objections must be filed with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered.   Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objection. Failure to object to factual findings will bar later review of those findings, except for plain error.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *Dupree v. Warden*, 715 F.3d 1295,

1300 (11th Cir. 2013).  Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.  An objecting party must serve a copy of its objections on each other party to this action.

Upon receipt of objections, a United States District Judge will make a *de novo* determination of those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the findings of fact and recommendations made by the magistrate judge.  The district judge must conduct a hearing if required by law.  Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence.  Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record.  The district judge also may refer this action back to the magistrate judge with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  A party may only appeal from a final judgment entered by a district judge.

**DONE** this 7th day of May, 2018.

STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE