# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| KAMILES CREWS-BEY | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:16-cv-1367-LCB-SGC |
| | ) |
| CORRECTIONAL OFFICER | ) |
| RODNEY SMITH | ) |
| | ) |
| Defendant. | |

## MEMORANDUM OPINION

The plaintiff, Kamiles Crews, is an inmate currently incarcerated by the Alabama Department of Corrections ("ADOC"). On January 23, 2017, acting *pro se*, plaintiff filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. The plaintiff named ADOC employees Warden Leon Bolling, Captain Jeffery Baldwin, Lieutenant Deaundra Johnson, Correctional Officer David Mason, and Correctional Officer Rodney Smith as defendants. The plaintiff sought injunctive and monetary relief based on allegations that the defendants conspired to have two inmates assault him on June 3, 2016. Additionally, the plaintiff claimed that Officer Smith and Officer Mason violated his Eighth Amendment rights by failing to protect him from the assault, and that Warden Bolling and Captain Baldwin failed to investigate the incident.

On May 7, 2018, the magistrate judge issued a Report and Recommendation that all of the plaintiff's claims be summarily dismissed except for his individual-capacity claim against Officer Rodney Smith. (Doc. 53). The judge previously assigned to this case[1] adopted the magistrate judge's report, accepted her recommendation, and granted summary judgement in favor of Warden Bolling, Captain Baldwin, Lieutenant Johnson, and Officer Mason. Summary judgment was denied as to Officer Smith in his individual capacity.[2] (Doc. 54-1).

This Court conducted a bench trial on the remaining claim on July 10, 2019. The plaintiff testified on his own behalf and also called Officer Smith as a witness. For the reasons stated below, the Court finds that the plaintiff failed to prove his claim, and judgment should be entered in favor of the defendant.

**I. Background**

In her Report and Recommendation, the magistrate judge thoroughly and accurately laid out the plaintiff's factual assertions underlying his claim. (Doc. 53, at 5-10). Thus, a brief recitation of the plaintiff's claims is all that is necessary.

According to the plaintiff, Lieutenant Johnson was angry with him because, he said, he had written her a series of letters. The plaintiff claimed that Johnson, along with the other defendants, conspired to have two other inmates, Raphael

---

[1] This case was reassigned to the undersigned on October 23, 2018.
[2] Summary judgment was entered as to any official-capacity claims against the defendants based on the doctrine of sovereign immunity. (Doc. 53, at 11).

Landrum and Anthony Jones, assault the plaintiff and break his hand. It is undisputed that the plaintiff was assaulted and injured by other inmates on June 3, 2016. As noted, the only claim to survive summary judgment was the failure-to-protect claim against Officer Smith. Thus, the testimony presented at trial was focused on that issue.

**II. Trial Testimony**

At trial, the plaintiff testified that, on June 3, 2016, he was attending a chapel service when he was approached by inmates Landrum and Jones who asked him to accompany them to the A and B unit to get money for another inmate. The plaintiff admitted that he was not housed in A and B unit, but admitted that he went to the unit with Landrum and Jones anyway. According to the plaintiff, the door to A and B unit was controlled by Officer Smith on the day in question. As the three inmates were about to enter the unit, the plaintiff said, Officer Smith called his name, shook a pen at him, and said, "you are about to get the stick." The plaintiff stated that he and the other two inmates were then allowed into the unit where the plaintiff was assaulted in a closed room. The plaintiff testified that one of the inmates used a stick to hit his hands. After the assault, the plaintiff stated that he got Officer Smith to let him back out of the unit. The plaintiff was later treated for his injuries at a local hospital.

3

Officer Smith testified that, on the day in question, he was the cube officer. According to Officer Smith, the cube officer sits in an enclosure approximately 50 feet from the doors and controls the locks on the doors to the units. Officer Smith denied that he ever told the plaintiff that he was "about to get the stick." Officer Smith testified that, on the day in question, he observed the plaintiff, along with Landrum and Jones, attempt to enter the A and B unit. Officer Smith stated that he did not allow the plaintiff to enter the unit because he knew that the plaintiff was not assigned to that area. However, Officer Smith said, he was the plaintiff about 30 minutes later trying to exit the unit through the front door. Smith stated that he believed the plaintiff surreptitiously entered the unit during a time when many inmates were coming and going to various chapel services. Smith denied that he had any knowledge that the plaintiff was ever in any danger whatsoever.

### III.  Legal Standard

The Eighth Amendment's prohibition on cruel and unusual punishment requires institutional officers to "take reasonable measures to guarantee the safety of the inmates" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted). It is clear, however, that not every injury suffered by an inmate at the hands of another inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; s*ee Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir.

1986).  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (*quoting Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981)); *see Gullatte v. Potts*, 654 F.2d 1007, 1012 (5th Cir. 1981).  In these contexts, a constitutional violation occurs only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively "sufficiently serious" harm.  *Farmer*, 511 U.S. at 834 (*quoting Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the eighth amendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference."  *Farmer*, 511 U.S. at 837.  An "official's failure to alleviate a significant risk that he should have perceived but did not," is insufficient to establish liability on the part of the official.  *Id*. at 838.  Furthermore, there must be a "'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference."

5

*Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (*quoting Brown*, 894 F.2d at 1537).

Once an institutional official's knowledge of a substantial danger or risk to an inmate is established, a plaintiff must show that the official was deliberately indifferent to that risk. An "Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835. Finally, a plaintiff must produce evidence sufficient to show a defendant's deliberate indifference to a known risk caused the plaintiff's constitutional injury. *See Hale v. Tallapoosa Cty*., 50 F.3d 1579, 1582 (11th Cir. 1995).

## IV. Findings of Fact

As noted, this Court conducted a bench trial and heard testimony from both the plaintiff and Officer Smith. The factual issue to be resolved was whether Officer Smith knew that the plaintiff was about to be subjected to serious harm and that, despite this knowledge, failed to take actions to protect the plaintiff. Officer Smith stated that he initially denied the plaintiff access to the A and B unit because, he said, he knew that the plaintiff was not assigned to that area. Officer Smith further testified that he believed the plaintiff later entered the unit without

his knowledge. Finally, Officer Smith denied that he ever told the plaintiff that he was "about to get the stick."

This Court finds Officer Smith's testimony to be credible. Besides his own testimony, the plaintiff offered no additional evidence that convinces this Court that Officer Smith had any prior knowledge of the assault that was about to occur on June 3, 2016.[3] Accordingly, it is the finding of this Court that the plaintiff has failed to meet his burden of proof with regard to his § 1983 claim against Officer Rodney Smith.

## V. Conclusion

Because the plaintiff failed to meet his burden of proof as discussed above, the Court finds in favor of the defendant. A judgment consistent with this memorandum of opinion will be entered separately.

**DONE** and **ORDERED** this August 29, 2019.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE

---

[3] The plaintiff requested that several other DOC employees be available at trial to be called as witnesses. Despite their presence at trial, the plaintiff stated that he did not believe they would help his case and declined to call them.

7